## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## PIKEVILLE

GREGORY POLLY, Administrator of
the Estate of Monica Polly, *et al.,*

      **Plaintiffs,**

V.

NATIONAL TRUST INSURANCE
COMPANY,

      **Defendant.**

CIVIL ACTION NO. 7:19-9-KKC-EBA


<u>OPINION AND ORDER</u>

*** *** ***

      This matter is before the Court on Defendant's motion for summary judgment. Plaintiffs Gregory Polly, as the administrator of the estate of Monica Polly; Travis Brown, as the next friend, guardian, and administrator of the estate of W.B., a minor child; and Whitney Brown originally brought suit in state court against several defendants, including Defendant National Trust Insurance Company. (DE 1.) Defendant removed the case to this Court. (DE 1.) Following the Court's denial of Plaintiffs' motion to remand (DE 13), Defendant filed this motion for summary judgment. (DE 65.) For the reasons stated below, the Court grants Defendant's motion.

### Background

      On August 28, 2017, Shaylee Boyd was driving northbound and through heavy rain on U.S. Route 23 near Prestonsburg, Kentucky. (DE 65-2 at 3.) Ms. Boyd attempted to overtake a truck owned by B&B Distributors, Inc. ("B&B") and being driven by Roy Conn by passing the truck in the left lane; as Ms. Boyd's vehicle reached the front axle of the truck,

she lost control of her vehicle, and there was a collision. (DE 65-2 at 3-4.) The truck struck a vehicle driven by Sally Garrett and another driven by Monica Polly. (DE 65-2 at 4.) Ms. Polly died as a result of injuries sustained in the collision, as did W.B., who was a passenger in the vehicle. (DE 65-2 at 4.) A second passenger in Ms. Polly's vehicle, Plaintiff Whitney Brown, was also injured. (DE 65-2 at 4.)

Plaintiffs filed the original complaint in Floyd Circuit Court on January 23, 2018. (DE 1-6.) The state court action was mediated on October 22, 2018 and ultimately settled, with Defendant, an insurance provider who at the time of the collision had insured both B&B and Mr. Conn, paying a total of $560,000 to Plaintiffs.[1] (DE 65-2 at 6, 10.) On December 18, 2018, Floyd Circuit Court granted Plaintiffs leave to file the second amended complaint, which alleges violations of KRS § 304.12-230, Kentucky's Unfair Claims Settlement Practices Act ("KUCSPA"). (DE 65-2 at 2; DE 1-1.) Plaintiffs allege, *inter alia*, that Defendant "owed the Plaintiffs a duty to conduct a good faith and reasonable investigation of the Plaintiffs' claim and to pay on the same promptly and in full," and that Defendant "recklessly, willfully and/or maliciously breached that duty by failing to pay, consider paying and/or fully investigating the Plaintiffs' claim" and "by failing to pay a fair amount on the Plaintiffs' claim." (DE 1-1 at 3.) The second amended complaint was the operative pleading at the time of removal, on January 23, 2019. (DE 1.)

On February 28, 2020, Defendant filed a motion for summary judgment pursuant to FED. R. CIV. P. 56. (DE 65.) Defendant argues, in summary, that it never had a clear obligation to pay claims made against its insured; Plaintiffs had previously agreed to settle any claims pursuant to the mediation; and Defendant's conduct was not outrageous, the result of evil motive, or made with reckless indifference to Plaintiffs' rights. (DE 65-2.)

---

[1] An additional $250,000 was paid to Ms. Garrett, for a total settlement figure of $810,000. (DE 65-13 at 1.)

## Analysis

### I. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden and must identify "those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). All evidence, facts, and inferences must be viewed in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "In order to defeat a summary judgment motion… [t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### II. Discussion

"The KUCSPA creates both first- and third-party obligations to settle insurance claims in good faith," and "imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured or to another person bringing a claim under an insurance policy." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 532 (6th Cir. 2006) (citation to *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006) and internal quotation marks omitted). For Plaintiffs to recover against Defendant on a theory of bad faith under the KUCSPA, Kentucky law requires them –

> to show that: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; *and* (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Hollaway v. Direct Gen. Ins. Co. of Miss., Inc.*, 497 S.W.3d 733, 737-38 (Ky. 2016) (emphasis in original) (citation omitted). Because Plaintiffs "bear[] the burden of establishing all three elements, to defeat summary judgment [they] must offer proof for all three." *Id.* at 738. Kentucky courts have instructed that "[p]roof of [the] third element" in this standard "requires evidence that the insurer's conduct was outrageous, or because of [its] reckless indifference to the rights of others." *Id.* at 738 (citation omitted). Because "[a] bad faith claim under Kentucky law is, essentially, a punitive action… [a]bsent evidence of punitive conduct, an insurer is entitled to a directed verdict for any bad-faith claim levied against it." *Id.* at 739.

On at least this third element of the applicable standard, Plaintiffs have failed to meet their burden to survive summary judgment. Defendant argues that there was a reasonable basis to dispute Plaintiffs' claims and that their insured's liability was never established (DE 65-2 at 12-16), and that having "defended its insureds from the claims and allegations of the Plaintiffs is not evidence of outrageous conduct, evil motive or reckless indifference to the rights of the Plaintiffs" (DE 65-2 at 18). Plaintiffs claim that Defendant had determined that its insureds were liable (DE 66 at 16-17), and argue that it was reckless or outrageous for Defendant to have made "claimants who lived a terrible tragedy relive the process over and over" and to have ultimately paid an amount that was less than its prior determination of fair value.[2] (DE 66 at 21.) The premise to this argument – that Defendant *did* determine that B&B and Mr. Conn were liable – appears to rely on Plaintiffs' assertions that "the defendant determined that after considering all coverage, liability and damage defenses, that its insured's exposure was at least $1,100,000.00[,]" "a loss value for the underlying claims was placed in the file[,]" and "[t]he internal value of the claims never changed throughout the life

---

[2] Plaintiffs peg this figure at $290,000 (DE 66 at 17, 21), which appears to represent the difference between the loss reserve figure and the total amount ultimately agreed to in the mediation (DE 66 at 6-7, 17).

of the claims." (DE 66 at 6 (emphasis removed).) Defendant counters, however – and the record does not contradict – that it merely established a loss reserve as required by statute, which is not legally significant in the way that Plaintiffs claim. (DE 69 at 7-8; DE 66-8; DE 66-9.)

The Kentucky Insurance Code includes provisions "mandating that insurers maintain loss reserves in an amount estimated in the aggregate to provide for payment of all losses and claims incurred." *In re Nat'l Distillers & Chem. Corp. v. Stephens*, 912 S.W.2d 30, 32 (Ky. 1995) (citation and internal quotation marks omitted). Reserves reflect "a business judgment and [not] a legal determination of the validity of the Plaintiffs' claims against" an insurer. *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-cv-2235-SHL-dkv, 2016 WL 5869580, at *15 (W.D. Tenn. Oct. 5, 2016). "[T]he majority rule holds that reserves do not evidence an admission of coverage, fault, or liability by the insurer." Douglas R. Richmond, *Recurring Discovery Issues in Insurance Bad Faith Litigation*, 52 TORT TRIAL & INS. PRAC. L.J. 749, 768 (2017). In other words, Defendant having ultimately paid an amount less than the initial loss reserve figure is not, itself, any compelling evidence of bad faith. Although there is some "contrary case law," *id.* at 769, that might support a different position,[3] nothing in Plaintiffs' argument or the record would compel the Court to adopt that contrary position in this case.

The record and Plaintiffs' briefing otherwise lack any allegation of Defendant's conduct that could plausibly satisfy the requisite showing described above and that is supported by evidence. *See Patrick v. Croley*, No. 12-CV-61-GFVT, 2013 WL 5328342, at *2

---

[3] *See, e.g., Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803 (Ky. 2004); *Park-Ohio Holdings Corp. v. Liberty Mut. Fire Ins. Co.*, No. 1:15-CV-943, 2015 WL 5055947 (N.D. Ohio 2015). Notably, the court in *Grange* was in a different posture addressing a different issue: plaintiffs in that case sought discovery of an insurer's "methodologies for setting reserves on claims that its adjusters handle," and the court found that "[e]vidence of [the insurer's] reserve setting procedures would help show whether [it] is following the statutory and regulatory requirements and whether the specific system for setting reserves is aimed at achieving unfairly low values," and "that this evidence is relevant to the bad faith claim." *Grange*, 151 S.W.3d at 813. Unlike in *Grange*, Plaintiffs' bad faith claims are not targeted at Defendant's compliance with reserve requirements.

(E.D. Ky. Sept. 20, 2013) ("the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact" (citation and internal quotation marks omitted).) Although Plaintiffs also argue that Defendant exhibited bad faith by delaying resolution of the claim and payment before the settlement (DE 1-1 at 3; DE 66 at 17-18), Defendant denies this conclusory allegation, which appears contradicted by the record (DE 69 at 9-10). Although Plaintiffs cite to a report by their claim expert, Gary T. Fye (DE 66 at 8-9), the discussion in those cited portions – about whether Defendant's purported delay amounted to a violation of the KUCSPA – is similarly conclusory. And regardless, "mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). In this case there is no "proof or evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured with respect to the applicable coverage." *Id.* at 452-53.

<u>Conclusion</u>

Accordingly, the Court hereby ORDERS that:

1) Defendant's motion for leave to supplement the record (DE 70) is DENIED as moot;

2) Defendant's motion for summary judgment (DE 65) is GRANTED; and

3) a judgment will be entered contemporaneously with this order.

Dated June 15, 2020



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY